James Miller, Executor of the last will of Daniel Mat-
ter, deceased, Appellant, *v.* Joseph McAlister.

*Judgment—Fraudulent confession—Evidence.*

On an issue as to whether a judgment confessed by a debtor in failing
circumstances for more than the sum due the creditor was confessed with
intent to defraud other creditors, or to secure future advances, evidence
that soon after the confession of the judgment another judgment was con-
fessed to a third person for such fraudulent purpose is inadmissible against
the judgment creditor, he having had no knowledge of such fact.

*Judgment for more than is due—Fraud—Issue to determine the validity
of judgment.*

S. owed M. $700 on a promissory note, which ran for ten years with-
out the payment of interest on it. At the end of the ten years it was
agreed that the amount due M. was $1,025. M. then requested S. to give
him a judgment. S. stated that he would soon be called upon to pay
over moneys which he held as a guardian, and at his request M. agreed
that the judgment note should be drawn for $3,000, and that S. could draw
upon him when the money was wanted. About two years afterwards
M. advanced $800 to S. upon the security of the judgment. A short
time afterwards S. died. There was no evidence that the note had been
given for $3,000 with any fraudulent intent. In 1895, the amount actually
due, including interest, was about $2,400. At the instance of another judg-
ment creditor of S. an issue was framed to determine the validity of the
judgment and, if valid, the amount due on it. *Held,* that a verdict and judg-
ment for the plaintiff in the judgment should be sustained.

Argued Jan. 1, 1896. Appeal, No. 11, May Term, 1896, by
plaintiff, from judgment of C. P. Dauphin Co., Sept. Term,
1895, No. 376, on verdict for defendant. Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ. Affirmed.

Issue to determine the validity of a judgment. Before SIMON-
TON, P. J.

At the trial defendant introduced testimony to show that in
1869 Daniel Smith owed Joseph McAlister $700, for which he
took a promissory note. No interest was paid on this note, and
in 1879 McAlister requested Smith to give him a judgment
note. Smith agreed to do this, and it was determined that the
amount due McAlister was $1,025. Before the judgment note
was given, Smith told McAlister that he needed more money

as he would soon be called upon to pay over moneys which he owed as guardian. McAlister accordingly agreed to take a judgment note for $3,000 and advance money to Smith when he needed it. In 1891, McAlister advanced Smith $800 upon security of the judgment.

Smith died in 1892, and his real estate was sold under an order of the orphans' court. McAlister claimed from the proceeds the sum of $1,025 with interest from November 1, 1889, and $800 with interest from February 8, 1891. James Miller executor of Daniel Matter, deceased, another judgment creditor, was granted an issue to try the question whether the judgment for $3,000 was given to delay, hinder and defraud creditors, and if not what was the sum due thereon.

When George Earnest, a witness for plaintiff, was called, an offer was made to prove by him that a judgment was entered in his favor to No. 212 April term, 1879, for $1,500, but at the time his judgment was confessed Daniel Smith came to his place of business and told him that he would get into financial trouble, and that he wanted to confess a judgment to him; that Mr. Earnest said "I don't know what it is;" that Mr. Smith said, "I will make it $1,500, and I want you to go down to Harrisburg and enter it at once;" this for the purpose of showing that this judgment was confessed within six days or four days after the judgment to Joseph McAlister was confessed, and this for the purpose of showing that he was in failing circumstances, financial trouble, and that he was confessing these judgments without consideration, but in fraud of creditors.

The offer was objected to because it did not offer to show that Mr. McAlister knew anything about the transaction between them, he was not cognizant of it.

The Court: I will have to exclude this; exception to the plaintiff. [3]

The court charged as follows:

A judgment for $3,000, as you have heard, was entered in favor of the defendant in this case, McAlister, in April, 1879, against Daniel Smith. This proceeding is to try the question of the legality and validity of that judgment. The plaintiff in this case claiming as you also have understood that that judgment was not given honestly or for a bona fide debt, but was

given for more than was due and was given for a dishonest purpose; and having made an application to the court setting forth and alleging that fact, an issue was granted in order to determine the question, and the issue as granted is stated in this way, in the form of two questions: First, was the judgment given to delay, hinder or defraud creditors of the said Daniel Smith, and especially to delay, hinder or defraud Daniel Matter or his estate? That is the first question that you are to determine. And the second question is, if the said judgment is a valid judgment, how much is now due thereon? That is the other question. If the judgment was given for the purpose of delaying, hindering and defrauding Daniel Smith's creditors, then it would not be a valid judgment at all; and if you should determine that, then the second question disappears. If you find however that it was a valid judgment, an honest judgment, then you would come to the second question and would have to determine how much is due upon that judgment.

It is argued by the counsel for the plaintiff here that to take a judgment for more than is due is a fraud in law, that is the form in which he stated the legal proposition to you. That is not strictly correct. If a judgment is taken by one person against another, when the person who gives the judgment is involved, is in debt, and especially if he is insolvent, then standing alone it would raise a presumption of fraud. If there was nothing else in it except the single fact that a person had taken a judgment against another for money that he did not owe, or for any considerable amount more than he did owe him, and the person who gave the judgment was at the time indebted to other persons and was insolvent, then if those other persons would come and show that fact and nothing more would be shown, the jury would be justified in saying that it was a fraud against the other creditors. But it is not a fraud in law nor is it a fraud in fact for a person to take a judgment for more than is due under certain circumstances. A person may take a judgment from a debtor for more than is due for the purpose of securing future advances, for the purpose, in other words, of doing precisely what Mr. McAlister testifies this judgment was taken for in this instance. A person may honestly do that. And in the case where, as I have said, a judgment is taken for more than is due, and where it is not taken for future advances,

and where there are other creditors, and the person is insolvent, while the presumption would be that it was a fraud with nothing further in the case, yet even in that case the reason why it was taken may be explained; and if the jury should find from all the evidence in the case that it was taken for an honest and legal purpose, then it would not be a fraud; and the question that you have to determine here is, on all the facts of this case, as you find them to be, whether or not this judgment was taken for an honest or a dishonest purpose. It is a question to be determined upon the evidence. You are not to infer that there was dishonesty from the mere fact of the judgment having been taken, when connected with the testimony that has been given in this case. [You are not to infer that there was fraud because the plaintiff has called the defendant and called his son-in-law or his brother-in-law, whoever it was. The rule in this case, as in all other cases, is that the plaintiff must make out his case by the preponderance of evidence, and, as in all other cases, he must get his evidence where best he can, and unless you have some reason to discredit the testimony of the witnesses, you can't discredit them simply from the fact that the plaintiff called the defendant or the defendant's witnesses. You have a right, and it is your duty, to consider who they are, and the relations they stand in to the case, and all that. You are to determine then as to their credibility, and as to what the facts really are. But the plaintiff is to make out his case, and in a question of this kind it is to be made out as in other cases.] [1]

[When certain facts are proved they lead to a certain conclusion, unless other facts are proved that explain them, and that is so in this case; and as we have said in this case, if you had nothing before you but the fact that a judgment was taken for $3,000 at the time that there was only $700 due, if you had nothing else before you than that, the presumption would be that it was not taken for an honest purpose; but as you have the case now you have to determine how it was upon all the facts as you find them to be, and if you find that the fact was that it was taken for more because it was intended that there should be future advances, because it was intended that Smith should get more money subsequently from McAlister, then they had a right to put it in that shape and McAlister had a

right to take a judgment then for the money that he intended
to advance afterwards.    You are to determine how the fact
was.] [1].

. [There is another matter that is necessary for you to con-
sider in this case and to understand, and that is that in order
to determine that this judgment was not honest, in order to
find a verdict, in other words, in this case in favor of the plain-
tiff, you must find from the evidence that the defendant Mc-
Alister took it for a dishonest purpose, even if Smith wanted
to give a judgment for more than was due; if he had a design
and purpose of that kind that would not make the judgment a
dishonest judgment in this case as against McAlister unless
McAlister intended that.] [1]

. [Now there is one thing that appears in this case that no use
was ever made of this judgment to benefit either Smith or Mc-
Alister so far as I have been able to see.    That is a matter for
you, however, to consider and determine, and in a case of this
kind, as it has been argued to you, you are to determine from
the facts and the circumstances and the proper inferences that
you can draw as to what it was taken for.    There is no one here
to swear positively that it was taken for a dishonest purpose;
McAlister swears that it was taken for an honest purpose, that
is his testimony; there is no one that swears that it was taken
for a dishonest purpose, but you have a right to look at all the
circumstances in order to determine what the purpose was; and
one of those circumstances I may simply suggest is—and that
might throw a good deal of light on it—what it was used for
after it was taken, and so far as I recall there is no testimony
that McAlister at any time tried to use it for any dishonest
purpose, that he made any claim upon it for any more than is
actually due.    I do not know that there is any evidence that
Smith ever tried to use it for a dishonest purpose.    It does not
seem to have been actively used at all.    It was put upon the
record and kept there.    If McAlister had gone on and issued an
execution and sold Smith's property and collected the money,
that would have tended very strongly to show that it was taken
for a dishonest purpose, because it would have been used for a
dishonest purpose if he had claimed $3,000 on it.    If he had
gone before this auditor and claimed $3,000 there, that would
have been dishonest, and that would have gone very far toward

showing that he took it for a dishonest purpose.  You have a right to use whatever was done so far as it bears upon the question of what was intended.  Mr. Miller testifies that when ·he was considering the question of whether he could collect his claim or not, he did not ask McAlister how much was due upon that judgment.  He says he did not expect a true answer, and therefore he did not ask; that is what Mr. Miller says.  If he had asked Mr. McAlister, one thing or other would have appeared.  If he had asked McAlister and he had claimed ·$3,000, that would go very far towards satisfying a jury that he took that judgment for a dishonest purpose, because he was trying to use it for a dishonest purpose; on the other hand, if he had asked him and he had told him there was only so much due, then Mr. Miller would have known what to do.  He did not choose to ask him either the one thing or the other.] [1]

From all the evidence then, gentlemen, in the case on the one side and on the other, and the evidence is within a comparatively narrow compass, you have to determine whether this judgment was taken for an honest or dishonest purpose, the law being that the plaintiff had a right to take it if he intended to hold it simply for the purpose of securing money that he subsequently intended and had arranged to advance to Smith.  He ought not to have taken it for $3,000 if all he intended to advance was $1,000 or $2,000.  I do not know how correct this calculation is on the part of the plaintiff.  . According to this calculation it seems that they claim now $2,400 and some odd dollars; it will be for the jury to determine how that is.  But it would not do for you to say that the man was acting dishonestly even if he acted simply carelessly, and if he did not act with quite as much business tact and care as a person might act and as he ought to have acted even.  Your question is, whether he was acting dishonestly, whether McAlister by taking this judgment was intending to hinder other creditors of Smith, persons who at that time were Smith's creditors, whether he was intending to hinder or delay them in collecting their debts from Smith, and if you find that he was, then you will find a verdict in this case in favor of the plaintiff, because if he was trying to commit a fraud that renders the whole thing invalid, and then he could not collect even what was honestly due.

You understand, gentlemen, on the other hand, if you do not

find that McAlister was acting for a dishonest purpose for the purpose of hindering and delaying Smith's creditors, then you must find the other fact, which probably is in a narrow compass, of how much there is actually due on this judgment, and your verdict would be for that amount; that is to say, you would find how much is due.

Gentlemen, I will say further about that calculation, you can take it with you as a memorandum. If the judgment was given for an honest purpose then there is due on it just exactly what McAlister advanced to Smith with interest on it from the time he did advance it. You remember about the $700 at one time and the $800 at another. The $700 seems to have gone into a revival at one time, and I don't know that there has been any testimony that that revival wasn't correct, and if that be correct you can start from that, $1,025, from the time it was revived, and then the $800 from the time it was given.

Verdict and judgment for defendant for $2,425.41. Plaintiff appealed.

*Errors assigned* were (1) portions of charge as above, quoting them ; (2) that the whole charged tended to mislead the jury ; (3) ruling on evidence, quoting the bill of exception.

*Lyman D. Gilbert*, with him *J. C. McAlarney*, for appellant. —A judgment confessed voluntarily by an insolvent or indebted man for more than is due is prima facie fraudulent within the statute of Elizabeth, c. 5 : Clark v. Douglass, 62 Pa. 408.

The rule is not that a case like this must be made out by " the preponderance of evidence : " Kaine v. Weigley, 22 Pa. 183 ; Redfield & Rice Man. Co. v. Dysart, 62 Pa. 62.

Fraud can rarely be proved by direct and positive testimony, and great liberality is always allowed in the introduction of evidence having a tendency to show it : Montgomery Web Co. v. Dienelt, 133 Pa. 594 ; Heath v. Page, 63 Pa. 108 ; Covanhovan v. Hart, 21 Pa. 495.

*J. C. Durbin*, for appellee.—Judgments to secure advances are valid, even as against intervening liens : T. & H. Practice, 1057.   A fraudulent judgment, like a fraudulent deed, is good against all except the interest to be defrauded : Meckley's App.,

22 Pa. 541.  It was not a void judgment and in no sense was it voidable by strangers to it only for fraud upon them: Clark v. Douglass, 62 Pa. 408.

OPINION BY MR. CHIEF JUSTICE STERRETT, October 5, 1896 :

This issue was awarded by the orphans' court to try and determine : 1st. Whether the judgment against Daniel Smith in favor of Joseph McAlister was or was not "given to delay, hinder or defraud the creditors of said Daniel Smith and especially to delay, hinder or defraud Daniel Matter or his estate ;" and, 2d. "If said judgment is valid, how much is now due thereon?"

Each of these questions depended upon facts which it was the exclusive province of the jury to determine.  The burden of proving the invalidity of the judgment was on the plaintiff in the issue, and testimony was accordingly introduced by him for that purpose.  On behalf of the defendant, rebutting evidence, tending to show that the judgment was given for an honest and legitimate purpose and not "to delay, hinder or defraud" any of the creditors of Smith, the defendant therein, was also presented.  The only testimony that was offered and rejected by the court is that referred to in the third specification.  We are clearly of opinion that there was no error in refusing to sustain the offer.  It is unnecessary to refer in detail to the testimony.  It was all properly before the jury for their consideration in determining the questions specified in the issue.  The case was fairly and fully submitted to them by the learned trial judge in a clear, comprehensive and fully adequate charge in which there appears to be no substantial error.  The jury by their verdict impliedly affirmed the validity of the judgment, and expressly found that the amount then due thereon to the defendant in the issue was $2,425.41.  These conclusions of fact were not only warranted by the testimony, but they are in accord with the manifest weight of the evidence.  A careful examination of the charge, in connection with the testimony, has satisfied us that it is neither misleading nor erroneous.  There is nothing in either of the specifications of error that requires further consideration.  All the facts and circumstances were properly submitted to and passed upon by the jury and the judgment entered on their verdict should not be disturbed.

Judgment affirmed.